FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 09, 2018

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMMY BLANCHARD, | No.1:17-CV-03057-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney D. James Tree represents Tammy Blanchard (Plaintiff); Special Assistant United States Attorney Danielle R. Mroczek represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on November 30, 2012, Tr. 231, alleging disability since February 18, 2011, Tr. 204-11, due to tumors in her uterus, hernia, depression, and anxiety, Tr. 234. The applications were denied initially and upon

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

reconsideration. Tr. 118-32, 135-45. Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on February 25, 2015 and heard testimony from Plaintiff and vocational expert, Trevor Duncan. Tr. 37-67. The ALJ issued an unfavorable decision on August 13, 2015. Tr. 19-30. The Appeals Council denied review on January 24, 2017. Tr. 1-6. The ALJ's August 13, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 28, 2017. ECF Nos. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the alleged date of onset. Tr. 204. Her highest level of education was the ninth grade, completed in 1978. Tr. 235. Her reported work history includes the jobs of cook, housekeeper, packer, router, and shift manager at a fast food restaurant. Tr. 236. Plaintiff reported that she stopped working on January 10, 2010 due to her conditions, stating that she "was experiencing depression and unexplained physical pain." Tr. 234

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 13, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 18, 2011, the alleged date of onset. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disk disease; affective disorder; and personality disorder. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a full range of work at a light exertional level with the following limitations:

> lift/carry up to 20 pounds occasionally, 10 pounds frequently; stand or walk for approximately six hours and six for approximately six hours per eight hour work day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch; never crawl; no overhead reaching with the right upper extremity, but otherwise unlimited; avoid concentrated exposure to excessive vibration and workplace hazards such as working with dangerous machinery or working at unprotected heights. She is able to perform simple, routine tasks with only superficial interaction with co-workers and the public, with no extensive teamwork.

Tr. 24. The ALJ identified Plaintiff's past relevant work as fast food worker and fast food manager and concluded that Plaintiff was not able to perform this past relevant work. Tr. 29.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of housekeeper, production assembler, and hand packager. Tr. 30. The ALJ concluded Plaintiff

was not under a disability within the meaning of the Social Security Act at any time from February 18, 2011, through the date of the ALJ's decision. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical source opinions and (2) failing to properly address Plaintiff's symptom statements.

## DISCUSSION

### 1. Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by T.H. Palmatier, M.D., Aaron Burdge, Ph.D, Glenda Abercrombie, ARNP, Richard Price, M.D., David W. Millett, M.D., and James Haynes, M.D. ECF No. 14 at 5-16.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v.*

*Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

**A. T.H. Palmatier, M.D.**

On February 26, 2010, Dr. Palmatier co-signed a treatment note rating Plaintiff's employability as "[s]he is released to very modified sedentary work status." Tr. 684. The ALJ did not discuss this statement in her opinion. Plaintiff argues the ALJ's failure to address the statement was an error. ECF No. 14 at 6.

Social Security Ruling (S.S.R.) 96-8p states that the residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." However, the Ninth Circuit has also held that medical opinions predating the alleged onset of disability are of "limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Warzecha v. Berryhill*, 692 Fed. Appx. 859, 860 (9th Cir. 2017).

Considering the opinion predates Plaintiff's alleged onset date by a year, any error that may have resulted from the ALJ's failure to discuss the opinion in her decision is harmless as the statement is of limited relevance. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). Additionally, the treatment note was co-signed by Nurse Abercrombie, Tr. 684, who the ALJ provided legally sufficient reasons for discounting her opinion. *See infra.*

**B. Aaron Burdge, Ph.D.**

On November 8, 2012, Dr. Burdge completed a Psychological/Psychiatric Evaluation form for the Washington Department of Social and Health Services (DSHS). Tr. 720-24. Dr. Burdge administered a Trails Making Test, a Hamilton Rating Scale for Depression (HAM-D), a Hamilton Rating Scale for Anxiety (HAM-A), and a Personality Assessment Inventory (PAI). Tr. 721. Additionally,

he completed a Mental Status Exam.  Tr. 724.  Following all this testing, Dr. Burdge opined that Plaintiff had severe limitations in the abilities to complete a normal work day and work week without interruptions from psychologically based symptoms and maintain appropriate behavior at work.  Tr. 723.  Additionally, Dr. Burdge found Plaintiff had a marked limitation in two areas of mental functioning and a moderate limitation in six areas of mental functioning.  Tr. 722-23.

The ALJ gave Dr. Burdge's opinion "minimal weight" because (1) the mental status examination he administered was entirely normal except for memory testing, (2) he provided no explanation for the boxes he checked, (3) Plaintiff did not present to him, and (4) Plaintiff was not receiving mental health treatment at the time of the evaluation.  Tr. 28.

First, the ALJ found that Plaintiff's fairly normal mental status exam administered by Dr. Burdge was inconsistent with the boxes he checked on the form.  Tr. 28.  Internal inconsistencies between a provider's testing and opinion is a clear and convincing reason to discount his opinion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, as Plaintiff asserts, the mental status exam was one of several tests administered by Dr. Burdge.  ECF No. 14 at 9-10.  The ALJ failed to address Plaintiff's severe and moderate results on the HAM-D and the HAM-A.  Tr. 721.  Additionally, Plaintiff's PAI profile showed a combination of hopelessness, agitation, confusion, and stress" and "may place the respondent at increased risk for self-harm."  *Id*.  However, if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *See Tackett*, 180 F.3d at 1097.  Here, there are normal results to support the ALJ's finding that there were inconsistencies between the examination results and the opinion.  *See* Tr. 721 (normal results on the Trails Making Tests A and B); Tr. 724 (normal speech, Plaintiff was alert and attentive and appeared to put forth adequate effort, affect was congruent, thought process and content was normal, orientation was normal, perception was normal, fund of

knowledge was normal, concentration was normal, abstract thinking was normal, and insight and judgement was normal).

Second, the ALJ found that Dr. Burdge failed to provide an explanation for the boxes he checked. Tr. 28. An ALJ may reject check-the-box reports that do not contain any explanation of the bases for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). The Ninth Circuit has found that check-the-box forms that are "supported by numerous records" are "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, there are no treatment notes from Dr. Burdge to support the opinion reflected on his form. While Plaintiff asserts that the information contained on the form support the limitations opined such as the abnormal test results discussed above, ECF No. 14 at 9-10, there are also enough normal findings to support the ALJ's determination that the limitations are unsupported. Tr. 721, 724. For this reason, the Court will not disturb the ALJ's treatment of Dr. Burdge's opinion. *See Tackett*, 180 F.3d at 1097. Third, the ALJ found that "it does not appear that the claimant presented to Dr. Burdge, so there are no clinical notes to support his limitations." Tr. 28. It unclear here what the ALJ is asserting. If the ALJ is asserting that Plaintiff was not physically examined by Dr. Burdge, this inconsistent with Dr. Burdge's statements that Plaintiff "looked casual and disheveled in dress," Tr. 724, supporting the fact that Dr. Burdge actually observed Plaintiff. If the ALJ is asserting that Dr. Burdge was not treating Plaintiff, this is a non-dispositive issue as the ALJ is required to address all medical source opinions, 20 C.F.R. §§ 404.1527(c); 416.927(c), and the ALJ must provide either clear and convincing or specific and legitimate reasons for rejecting a provider's opinion whether he is a treating or an examining physician, *Lester*, 81 F.3d at 830. Therefore, this reason is not legally sufficient to support discounting Dr. Burdge's opinion.

Fourth, the ALJ found that Plaintiff was not receiving mental health

treatment at the time of the evaluation. Tr. 28. The Ninth Circuit has found that a lack of treatment may support a finding that Plaintiff's reported symptoms are unreliable, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), but a lack of treatment is not an indication that a provider's opinion is unreliable. Therefore, this not legally sufficient to support discounting Dr. Burdge's opinion.

While the ALJ may have erred in two of the four reasons provided for discounting Dr. Burdge's opinion, he did provide two reasons that were supported by substantial evidence and met the clear and convincing standard. Therefore, any errors resulting from the ALJ's flawed reasons for the weight provided to Dr. Burdge's opinion are harmless. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

## C. Glenda Abercrombie, ARNP

On July 9, 2010, Nurse Abercrombie completed a Functional Assessment for DSHS in which she opined that Plaintiff could stand for two to four hours in an eight hour work day, sit for four to six hours in an eight hour work day, lift fifteen pounds occasionally, and lift five pounds frequently. She further opined that Plaintiff had moderate limitations in the abilities to sit, stand, walk, lift, handle, and carry and was restricted in her abilities to bend, climb, crouch, handle, kneel, pull, push, reach, sit and stoop. Tr. 692. She then opined that Plaintiff's overall work level was limited to sedentary. *Id*.

The ALJ did not find Nurse Abercrombie's opinion persuasive because (1) she had referred Plaintiff to another provider to treat her shoulder complaints several times and Plaintiff failed to follow through the referral so Nurse Abercrombie completed the DSHS form herself, (2) her opinion was inconsistent with the record, (3) her opinion was internally inconsistent, and (4) she relied on Plaintiff self-reports.

Ms. Abercrombie is a nurse practitioner and, therefore, is not an acceptable

medical source.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2016).[1]  Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a nurse practitioner.  20 C.F.R. §§ 404.1513, 416.913 (2016).[2]  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d) (2016),[3] "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

The reasons the ALJ provided for rejecting Nurse Abercrombie's opinion meet the germane standard.  She did instruct Plaintiff seek treatment from another provider for the shoulder complaints.  Tr. 898, 899, 905.  Only upon Plaintiff reporting that she would lose her benefits unless the DSHS forms were completed was Nurse Abercrombie willing to complete the forms.  Tr. 905.  Additionally, the form appears internally inconsistent with Nurse Abercrombie indicating there were no postural restrictions on page two of the form, Tr. 690, and then finding postural restrictions present on page four of the form, Tr. 692.  While Plaintiff argues that these are not inconsistent determinations, ECF No. 14 at 13-14, the germane

---

[1]On March 27, 2017, these regulations were amended and the definitions of an acceptable medical source now appear in 20 C.F.R. §§ 404.1502(a), 416.902(a) and in claims filed with the agency after March 27, 2017, a nurse practitioner will be considered an acceptable medical source.  Since Plaintiff filed this claim in 2012, this new rule is not applicable.

[2]On March 27, 2017, these regulations were amended and instructions on how to weigh evidence for cases filed before March 27, 2017 now appear in 20 C.F.R. §§ 404.1527, 416.927.

[3]On March 27, 2017, these regulations were amended and the instructions on how to weigh "other sources" now appear at 20 C.F.R. §§ 404.1527(f), 416.927(f).

standard is the lesser of the three standards and under *Tackett*, if there is evidence to support either outcome, the court may not substitute its judgment for that of the ALJ. Therefore, the Court will not disturb the ALJ's treatment of Nurse Abercrombie's opinion.

**D.      Richard Price, M.D., David W. Millett, M.D., and James Haynes, M.D.**

On February 19, 2010, Drs. Price, Millett, and Haynes evaluated Plaintiff for the Washington Department of Labor and Industries. Tr. 642-55. They diagnosed Plaintiff with a "[c]ervical strain and buttock contusion relative to the industrial injury of January 7, 2009" and "[a]dministratively accepted dislocated thoracic vertebra and lumbar sprain." Tr. 649. They stated that based on the examination "there is no objective evidence of any abnormality relative to this industrial injury to support the patient's ongoing complaints of pain and disability." Tr. 649. They went on to recommend that her industrial claim be closed as there was no objective basis to indicate a rating for the lumbar spine. Tr. 650. In the psychological evaluation, Plaintiff denied any mental or emotional symptoms. Tr. 654.

In the her decision, the ALJ gave these doctors some weight, finding that subsequent imaging revealed a shoulder impingement and some mild findings of degenerative disk disease. Tr. 27. Plaintiff alleges that the opinion was internally inconsistent, lacking in significant information, and only concerned her work related injury. ECF No. 14 at 16-17. However, the ALJ considered the outstanding evidence not available to Drs. Price, Millett, and Haynes and only assigned some weight to the opinion. Tr. 27. Here, the ALJ provided an explanation for the weight provided and did not error in her treatment of this opinion.

**2.      Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that her symptoms statements are less than fully credible. ECF No. 14 at 16-20.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 25. The ALJ reasoned that Plaintiff was less than fully credible because (1) her statements are not corroborated by the objective medical evidence, (2) her treatment has been "scant," (3) there is evidence that Plaintiff over-stated symptoms, (4) there are inconsistencies in the record, and (5) she has a sporadic work history. Tr. 25-27.

### A.    Objective Medical Evidence

The ALJ's first reason for finding Plaintiff less than credible, that Plaintiff's symptoms are not supported by objective medical evidence, Tr. 25, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ cited to multiple normal imagining results and diagnoses of only minor conditions, such as sprains. Tr. 25. Plaintiff argues that he ALJ records indicating limitation range of motion, hyperreflexia or hypertonicity, slow gait, decreased sensation, tingling, or numbness, spasms, and positive exam results indicating impairments. ECF No. 14 at 17. However, if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. As both the

ALJ and Plaintiff pointed out, there is evidence to support both conclusions. Therefore, the Court will not disturb the ALJ's determination.

**B.    Treatment**

Next, the ALJ found that Plaintiff's "[t]reatment has also been scant."  Tr. 25.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that the claimant was not taking pain medication).  In coming to this conclusion, the ALJ acknowledged that Plaintiff lacked private medical insurance, but found that she was receiving state benefits and this would "likely gave her access to care."  Tr. 25 *citing* Tr. 675.  Plaintiff alleges that the ALJ's determination is not supported by substantial evidence as there were reasonable explanations by Plaintiff for her missed appointments, including the fact that Plaintiff's car was totaled.  ECF No. 14 at 19.

The record shows that Plaintiff was scheduled to be seen at the Rehabilitation Institute of Washington on May 4, 2010.  Tr. 682.  On April 23, 2010 Plaintiff was informed of the upcoming appointment and of the fact that her expenses could be reimbursed.  Tr. 681.  On May 14, 2010 she reported that she was involved in a car accident on Tuesday that rendered her car unreliable and missed the appointment.  Tr. 680.  However, the Tuesday prior to May 14, 2010 was May 11, 2010, after the appointment scheduled for May 4, 2010.  Regardless, she reported she would get a ride to a new appointment on May 20, 2010.  Tr. 680. However, she missed the May 20, 210 appointment and failed to call the facility to inform them that she could not attend.  Tr. 678.  As such, Plaintiff's argument regarding the lack of transportation is unsupported.  The Court will not disturb the

ALJ's determination.

The ALJ also found that Plaintiff failed to seek treatment for her mental health symptoms. Tr. 26. The Ninth Circuit has held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen*, 100 F.3d at 1465. Therefore, the Court will not hold the failure to seek mental health treatment against the Plaintiff. However, as discussed above the ALJ's finding that Plaintiff's treatment for her physical symptoms were "scant" is supported by the record.

### C. Over-stated Symptoms

The ALJ found that the record showed Plaintiff had over-stated her symptoms by showing evidence of pain behavior that a doctor found to be unusual, she described her headaches as exceeding the pain scale yet there is no evidence she went to the emergency room with complaints of headaches, and that the PAI scores were outside the normal range. Tr. 26-27.

The ALJ first points to a report by Dr. Millett and Dr. Haynes finding Plaintiff demonstrated "substantial evidence of pain behavior, in that her inability to lift her right shoulder because of discomfort in the right paracervical area certainly is an unusual finding. I think this is entirely related to pain behavior. There is no evidence of any underlying neurological abnormality." Tr. 649. The doctors than concluded that Plaintiff was "capable of employment." *Id*.

The ALJ also cites to a July of 2011 evaluation in which two of Plaintiff's Waddell's signs were positive. Tr. 26 *citing* 717. The Ninth Circuit has specifically held that Waddell signs are not affirmative evidence of malingering; while the test establishes five signs of nonorganic low back pain, it does not distinguish between malingering and psychological conditions. *Wick v. Barnhart*, 173 Fed. Appx. 597, 599 (9th Cir. 2006). However, the positive Waddell's signs considered with Plaintiff's demonstration of pain behavior, as discussed above, and the reports of pain exceeding the ten point scale and her PAI results supports the

ALJ's findings, as discussed below.

The ALJ then points to the record where Plaintiff alleges that her headache pain exceeds the pain scale but failed to present at the emergency room with headache complaints. Tr. 26 *citing* 635, 684, 686. On July 15, 2009 Plaintiff presented to an office visit stating her pain was ten out of ten pain in her neck and shoulders and a headache. Tr. 635. On January 15, 2010 Plaintiff reported at an office visit that she had a migraine headache three times a month at the pain intensity of eleven out of ten. Tr. 686. On February 26, 2010, Plaintiff complained of pain in her cervical spine with pain radiating up the back of her head as a twelve out of ten for the three prior days and a nine out of ten on the day of the exam. Tr. 684.

Additionally, the ALJ cited to the PAI scores from November of 2012. Tr. 26-27 *citing* Tr.731. The section regarding the validity of the testing stated that "[c]ertain of these indicators fall outside of the normal range, suggesting that the respondent may not have answered in a completely forthright manner," and that Plaintiff "presents with certain patterns or combinations of features that are unusual or atypical in clinical populations but relatively common among individuals feigning mental disorder. It is suggested that the critical items, as well as certain aspects of the clinical history, be reviewed to evaluate the possibility of such distortion." Tr. 731. This in combination with the other evidence considered by the ALJ supports the ALJ's determination.

### 4. Inconsistencies in the Record

The ALJ cited to two inconsistencies in the record that supported her determination that Plaintiff's symptoms statements were less than fully credible: (1) that claimant testified she was homeless for the last four years but stated to police that she was babysitting her grandchildren in her home and (2) that Washington Department of Labor and Industries closed her claim despite her "dramatic complaints." Tr. 27. The ALJ may consider "ordinary techniques of

credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

At the hearing, Plaintiff testified that she had been homeless for four years. Tr. 42. However, a Police Report dated May 30, 2013 describes a domestic dispute stemming from Plaintiff watching children at a residence and the children's parents failing to pay her resulting in the electricity to the home being shut off. Tr. 621-22. This would indicate that Plaintiff had a residence in which she could watch children and was responsible for paying bills associated with the residence. Plaintiff argues that this record is not inconsistent with her claims of homelessness alleging that it does not prove Plaintiff owned or rented the residence. ECF No. 14 at 19. However, the fact that Plaintiff alleged that she was unable to pay the power bill because she was not paid for the time she spent babysitting is inconsistent with Plaintiff's claims of merely couch-surfing. Therefore, this inconsistency supports the ALJ's determination.

The ALJ's determination that the closure of Plaintiff's claim with the Washington Department of Labor and Industries as inconsistent with her degree of alleged symptoms fails to meet the specific, clear and convincing standard. Washington State Department of Labor and Industries has a different set of requirements for benefits than the Social Security Administration. *See* WAC 269-17-31001 through 296-17-35204. Considering this, without more specific inconsistencies cited by the ALJ, the fact that the case file was closed is not sufficient to support the ALJ's determination.

The ALJ also mentioned that Plaintiff attributed her physical symptoms to a fall in 2009, however, the record also showed that she fell twice in 2008. Tr. 25 *citing* Tr. 806. The ALJ implies that this represents an inconsistency between the record and Plaintiff's statements. However, it is unclear how Plaintiff blaming her third fall as the cause of her symptoms and the fact that there were two previous

falls was inconsistent.  As such, this alleged inconsistency found by the ALJ is not sufficient to support her determination.

### 5.    Work History

The ALJ found that Plaintiff's sporadic work history indicated that her "barriers to work predated her alleged disabling conditions," that she provided inconsistent reasons for leaving her previous employment, and that she had an overpayment with the Washington State Employment Security Department serving as "a disincentive to work unrelated to her impairments." Tr. 27.

The ALJ's determination that Plaintiff's sporadic work history showed that barriers to work predated her alleged disabling conditions is a legally sufficient reason to find her symptom statements unreliable.  An ALJ finding that a claimant had a limited work history and "ha[d] shown little propensity to work in her lifetime" meets the specific, clear, and standard.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Plaintiff's work history shows limited income from 1998 to 2002 and no income in 2003 and 2004.  Tr. 212, 214-15.  Therefore, the ALJ's reason is both legally sufficient and supported by substantial evidence.

The ALJ's determination that Plaintiff's inconsistent statements regarding why she left her last place of employment is a legally sufficient reason to determine her symptom statements were less than fully credible.  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.  Upon application, Plaintiff stated that she left her last job in January of 2010 because "I was experiencing depression and unexplained physical pain.  It became difficult for me to do the work."  Tr. 234.  In her Disability Report for completed for DSHS Plaintiff stated that she stopped working in December of 2009 because she "was not able to continue with job duties due to my injury, was let go."  Tr. 222.  In her hearing testimony, Plaintiff stated that her

last job was at Burger King, Tr. 43, and that she left that job because "[t]here was a $5 discrepancy in the till. That's what they used for firing me rather than my medical because I had fallen and gotten hurt." Tr. 54. The statements are inconsistent, and the ALJ's rationale was legally sufficient and supported by substantial evidence.

The ALJ's determination that Plaintiff's overpayment with the Washington State Employment Security Department served as a disincentive to work that was unrelated to her impairments is not a legally sufficient reason to find her symptom statements less than fully credible. The fact that a claimant's wages will be garnished if she works is insufficient to find her unreliable in her symptom statements.

In conclusion, the Court will not disturb the ALJ's determination. While some of the reasons the ALJ provided for discounting Plaintiff's symptoms statements failed to meet the specific, clear and convincing standard, any error resulting from the ALJ's reliance on these reasons is harmless as she provided additional reasons that met the standard. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

1    2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2    The District Court Executive is directed to file this Order and provide a copy

3  to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant**

4  and the file shall be **CLOSED**.

5    DATED February 9, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE